**E-FILED on**   10/30/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re ESS TECHNOLOGY, INC. SECURITIES LITIGATION<br><br>This Document Relates to:<br>    ALL ACTIONS. | No. C-02-04497 RMW<br><br>ORDER DENYING LEAD PLAINTIFF'S MOTION UNDER 15 U.S.C. § 78u-4(a)(4)<br><br>**[Re Docket No. 261]** |

    Lead plaintiff Steve Bardack seeks "relief under 15 U.S.C. § 78u-4(a)(4) for the substantial time and effort he expended during the five years he prosecuted this case on behalf of absent Class members." Mot. at 1. Pursuant to the stipulation of settlement between the parties, defendants do not oppose the motion. The court has considered the arguments of counsel on behalf of lead plaintiff's request and for the reasons set forth below, denies lead plaintiff's request for compensation.

## I. BACKGROUND

    On September 13, 2002, multiple plaintiffs sued ESS Technology, Inc. ("ESST") and its officers and directors for alleged securities violations. On January 29, 2003 this court appointed Steve Bardack lead plaintiff. Lead plaintiff and defendants agreed to settle this matter pursuant to the parties' Stipulation of Settlement and Release dated November 12, 2006 for a gross settlement

amount of $3,500,000. On July 27, 2007, the court heard and granted Bardack's motion for final approval of the settlement and the parties plan of allocation of the settlement proceeds. At that time, the court indicated that it would tentatively approve the request of lead counsel, Coughlin Stoia Geller Rudman & Robbins LLP, for attorney's fees of 15% of the settlement fund net of expenses subject to the submission of materials to support the attorney's fee request. The court also denied lead plaintiff's request for recovery under 15 U.S.C. § 78u–4(a)(4), stating that the amount of the request, $196,000 to be paid from the proceeds otherwise to be distributed to the class, was excessive.

Lead plaintiff asks that the court approve his request under § 78u–4(a)(4) in full and permit the deduction of the amount from lead counsel's attorney's fee award.

## II. ANALYSIS

Lead plaintiff Bardack seeks reimbursement under 15 U.S.C. § 78u-4(a)(4) for his participation in the amount of $196,000. Bardack contends that this amount represents 245 hours over the last five years "directing the prosecution of this case for the benefit of the Class" at an hourly rate of $800, which represents less than his usual hourly compensation of $1500 as a "corporate consultant and manager of a successful investment firm." *See* Mot. at 1; Decl. of Steve Bardack ("Bardack Decl.") ¶ 3.

At the outset of litigation under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a lead plaintiff is required to certify that he "will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with paragraph (4)." 15 U.S.C. § 78u-4(a)(2)(A)(vi). The referenced section, § 78u-4(a)(4) of the PSLRA, provides for recovery by plaintiffs as follows:

> The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class.

As set forth in the Committee Report on the Private Securities Litigation Act of 1995, Congress enacted this provision of the PSLRA to "remove the financial incentive for becoming a lead

1 plaintiff."  H.R. Conf. Rep. No. 104-369 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 734.  15

2 U.S.C. § 78u-4(a)(4) "limits the class representative's recovery to his or her pro rata share of the

3 settlement or final judgment" which is to be "calculated in the same manner as the shares of the

4 other class members."  *Id.*  The Conference Committee recognized, however, "that lead plaintiffs

5 should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff,

6 including lost wages" and granted courts "discretion to award fees accordingly."  *Id.*

7       Thus, the court must determine whether what lead plaintiff seeks are "reasonable costs and

8 expenses (including lost wages) directly relating to the representation of the class" as permitted

9 under the PSLRA or is instead some other incentive award.  *Cf. In re Heritage Bond Litig.*, 2005 WL

10 1594403 at *14 (S.D. Cal. 2005) ("[The] Court is mindful as to distinguish between 'reasonable costs

11 and expenses,' and what appears to be a 'compensation' or 'incentive' award.").

12       Bardack states that he is "seeking reimbursement for [his] time in connection with [his]

13 services as the Lead Plaintiff in this litigation."  Bardack Decl. ¶ 3.  Bardack includes a record of the

14 time he spent on this case, which indicates that he conducted research prior to contacting Darren

15 Robbins (then with Milberg Weiss, now with Coughlin Stoia) to initiate this action, and

16 subsequently participated in the litigation by reviewing materials, engaging in periodic conferences,

17 providing input into the case, reviewing pleadings and motions, and participating in the settlement

18 negotiations.  *Id.*, Ex. A.  In support of his requested hourly rate of $800, Bardack's declaration also

19 establishes that his hourly compensation between 2002 and 2006 was from $1300 to $1500.  *Id.* ¶ 2.

20 However, the court finds no evidence in Bardack's declaration that the compensation he seeks is

21 reimbursement for costs, expenses or lost wages, reasonable or otherwise, as required by the text of

22 § 78u-4(a)(4).

23       Numerous courts reviewing lead plaintiff fee requests under the PSLRA have concluded that

24 in order to recover under § 78u-4(a)(4), the lead plaintiff must provide meaningful evidence

25 demonstrating that the requested amounts represent actual costs and expenses incurred directly as a

26 result of the litigation.  *See, e.g., In re AMF Bowling Sec. Litig.*, 334 F. Supp. 2d 462, 470 (S.D.N.Y.

27 2004) ("Nothing presented to me places the time devoted to this case by the two class

28 representatives into the category of a recoverable expense.  Neither claims any out-of-pocket

ORDER DENYING LEAD PLAINTIFF'S MOTION UNDER 15 U.S.C. § 78u-4(a)(4)— C-02-04497 RMW
MAG                                                   3

expense. There is no assertion that either lost time at work or gave up employer-granted vacation time."); *Abrams v. Van Kampen Funds, Inc.*, 2006 WL 163023 at *4 (N.D. Ill. 2006) ("Lead plaintiffs do not contend that any portion of the requested amount represents any actual expenses that either has incurred. They do not claim that they missed any work or other earning opportunity in order to participate in the litigation. Under the PSLRA, lead plaintiffs cannot be awarded additional compensation."); *In re KeySpan Corp. Sec. Litig.*, 2005 WL 3093399 at * 21 (E.D.N.Y. 2005) ("Counsel have not shown how the time expended by the Class Representative and Lead Plaintiffs resulted in actual losses, whether in the form of diminishment in wages, lost sales commissions, missed business opportunities, use of leave or vacation time or actual expenses incurred."); *see also* S. Rep. No. 104-98 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 689 ("Recognizing that service as the lead plaintiff may require court appearances or other duties involving time away from work, the Committee grants courts discretion to award the lead plaintiff reimbursement for 'reasonable costs and expenses' (including lost wages) directly relating to representation of the class."). Here, Bardack does not establish that the 245 hours he claims to have expended in participating in the litigation of this case resulted in any actual losses to him, whether from time away from work, lost business opportunities, or other missed earning opportunities.

 Nevertheless, lead plaintiff argues that his fee request, though high, "is consistent with the purposes of the [] PSLRA, *i.e.*, to encourage the appointment of sophisticated and experienced lead plaintiffs who are capable of actively overseeing and directing counsel." Mot. at 1. He contends that the purpose of enacting this provision was to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." Mot. at 2 n.2 (citing Private Securities Litigation Reform Act of 1995, H.R. Conf. Rep. No. 104-369, 1995 U.S.C.C.A.N. at 731). But the Congressional Committee, citing the need to reform abuses involving the use of professional plaintiffs as lead plaintiffs, also clearly indicated that the enactment of the PSLRA was intended to eliminate the possibility of "bounties" or "bonuses" for certain lead plaintiffs in order to reduce the number of frivolous securities suits. The

Congressional Committee made the following comments on the subject of "The Professional Plaintiff and Lead Plaintiff Problems:"

> House and Senate Committee hearings on securities litigation reform demonstrated the need to reform abuses involving the use of "professional plaintiffs" and the race to the courthouse to file the complaint. Professional plaintiffs who own a nominal number of shares in a wide array of public companies permit lawyers readily to file abusive securities class action lawsuits. Floor debate in the Senate highlighted that many of the "world's unluckiest investors" repeatedly appear as lead plaintiffs in securities class action lawsuits. These lead plaintiffs often receive compensation in the form of bounty payments or bonuses. The Conference Committee believes these practices have encouraged the filing of abusive cases. Lead plaintiffs are not entitled to a bounty for their services. Individuals who are motivated by the payment of a bounty or bonus should not be permitted to serve as lead plaintiffs. These individuals do not adequately represent other shareholders – in many cases the "lead plaintiff" has not even read the complaint. The Conference Committee believes that several new rules will effectively discourage the use of professional plaintiffs.

H.R. Conf. Rep. No. 104-369, 1995 U.S.C.C.A.N. at 731-32.  The above statements reflect at least two concerns: (1) that the use of professional plaintiffs owning only nominal numbers of shares in public companies be curtailed because such plaintiffs do not adequately represent the other shareholders and do not meaningfully participate in the litigation; and (2) that "[i]ndividuals who are motivated by the payment of a bonus or bounty [] not be permitted to serve as lead plaintiff." *Id.*

Lead plaintiff appears to have been extensively involved with the litigation and therefore does not appear to fall into the category of "professional plaintiff" about which Congress had expressed concern.  Nevertheless, the Congressional Committee's comments also demonstrate a clear intention to remove financial incentive for becoming a lead plaintiff.  The Committee clearly states that lead plaintiffs should not be motivated by the payment of a bonus or bounty and, as set forth above, also clearly states that its intention in enacting the PSLRA is to "remove the financial incentive for becoming a lead plaintiff."  H.R. Conf. Rep. No. 104-369, 1995 U.S.C.C.A.N. at 731, 734.  Viewing the Congressional Committee's stated preference for "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders," H.R. Conf. Rep. No. 104-369, 1995 U.S.C.C.A.N. at 731, in light of its further statement that 15 U.S.C. § 78u-4(a)(4) "limits the class representative's recovery to his or her pro rata share of the settlement or final judgment [to be] calculated in the same manner as the shares of the other class members," *id.* at 734, leads the court to the conclusion that the primary source of a lead plaintiff's recovery under the

1  PSLRA is to be on the same terms as the class members for which relief was obtained and that only
2  reasonable actual costs and expenses are to be available above the pro rata share of the settlement.
3      Other courts have awarded lead plaintiffs fees in actions under the PSLRA without proof that
4  such fees represented an award of "costs and expenses (including lost wages) directly relating to the
5  representation of the class."  For example, in *In re Heritage Bond Litig.*, 2005 WL 1594403 (C.D.
6  Cal. June 10, 2005), the court denied lead plaintiffs' request for an award of reasonable costs and
7  expenses under the PSLRA because "no such award is shown to be appropriate" but held that
8  irrespective of the PSLRA provisions, courts have discretion to award reasonable incentive awards
9  or compensation awards in addition to or in lieu of an award under the PSLRA.  *Id.* at *17 (citing
10 *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)); *see also In re Xcel*
11 *Energy, Inc.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (citing two non-PSLRA cases to justify
12 granting a compensatory award in a PSLRA class action).  However, in light of the text of § 78u-
13 4(a)(4), and the clear intention to eliminate financial incentives, bonuses and bounties for serving as
14 lead plaintiff, this court concludes that incentive awards and compensatory awards falling outside
15 the costs and expenses specified by the PSLRA are inconsistent with the express goals of § 78u-
16 4(a)(4).  Therefore, the court declines to award lead plaintiff's the $196,000 compensation he seeks
17 and denies his motion under § 78u-4(a)(4).

### III.  ORDER

19 For the foregoing reasons, the court denies lead plaintiff's motion pursuant to 15 U.S.C. §
20 78u-4(a)(4).

23 DATED:     10/29/07                    *Ronald M Whyte*
                                           RONALD M. WHYTE
24                                         United States District Judge

**Notice of this document has been electronically sent to:**

| | |
|---|---|
| Joshua D. Baker | jbaker@omm.com |
| Eric J. Belfi | ebelfi@labaton.com |
| Luke O Brooks | lukeb@csgrr.com |
| Joy Ann Bull | JOYB@csgrr.com |
| Patrick J. Coughlin | PatC@csgrr.com |
| Dario DeGhetaldi | deg@coreylaw.com |
| Dale M. Edmondson | dedmondson@omm.com |
| Sara May Folchi | sfolchi@omm.com |
| Lionel Z. Glancy | info@glancylaw.com |
| Michael M. Goldberg | info@glancylaw.com |
| John K. Grant | johnkg@csgrr.com |
| Reed R. Kathrein | reed@hbsslaw.com |
| Meredith N. Landy | mlandy@omm.com |
| William S. Lerach | e_file_sd@lerachlaw.com |
| Thomas Mauriello | tomm@maurlaw.com |
| Jerry E. Nastari | jen@coreylaw.com |
| Jeffrey S. Nobel | firm@snlaw.net |
| Ira M. Press | ipress@kmslaw.com |
| Amanda L. Riddle | alr@coreylaw.com |
| Darren Jay Robbins | e_file_sd@csgrr.com |
| Lori Elizabeth Romley | lromley@omm.com |
| Kevin Francis Ruf | info@glancylaw.com |
| Andrew M. Schatz | firm@snlaw.net |
| David R. Scott | drscott@scott-scott.com |
| Evan Jason Smith | esmith@brodsky-smith.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     10/30/07                              /s/ MAG
                                                **Chambers of Judge Whyte**

ORDER DENYING LEAD PLAINTIFF'S MOTION UNDER 15 U.S.C. § 78u-4(a)(4)— C-02-04497 RMW MAG
7